[No. 26365. Department One. January 16, 1937.]

BERT A. SMYSER, *Respondent,* v. J. C. MURPHY *et al.,*
*Appellants.*[1]

*A. O. Burmeister* (*John D. Cochran,* of counsel), for
appellants.

*Leo Teats* and *Ralph Teats,* for respondent.

GERAGHTY, J.—This appeal is from a judgment
against the appellants in the sum of $582.70, entered
after trial to the court without a jury. The respondent
sued on a contract for the decoration of a dance hall
owned by the appellants. The contract was made in
the name of J. J. Werner, who was joined as a defend-
ant but later dismissed from the action. The con-
troverted issue of fact is whether Werner made the
contract with the respondent as agent for the appel-
lants or for himself as principal. (For convenience,
reference hereafter will be made to the appellants as if
the husband Murphy were the sole appellant.)

[1]Reported in 64 P. (2d) 77.

The contention of the appellant in the trial court and here is that an oral understanding had been had between him and Werner, by the terms of which Werner was to purchase the dance hall to be so decorated, and that, while appellant had advanced to Werner the funds to make certain other necessary repairs and improvements on the dance hall, the sums so paid were loans made in contemplation of the purchase by Werner of the building, and were to be repaid. The appellant had acquired the dance hall through foreclosure of a mortgage held by him.

No written contract was ever entered into between the appellant and Werner, either covering the alleged agreement to purchase or otherwise defining the relation of Werner to the dance hall operation. Under the written agreement entered into by respondent and Werner, certain decorations were to be made by respondent for the full price of $660, payable in monthly installments of $55 each; the first and last installments, aggregating $110, were made by the retention by respondent of certain items of property, described as salvage in the record. Default was made in the other payments, and there was alleged to be due on the contract, at the commencement of the action, $550 with interest.

Called as a witness for respondent, Werner testified:

"Mr. Murphy asked me how I would like to run the place for him, but I told him I had no money to do anything like that, and Mr. Murphy said, 'You don't have to worry about that.' There was not much further said as he was going to foreclose his mortgage against the property. This was in 1933. The mortgagor moved out in September or October of 1934. The furniture had been moved out and the wiring stripped off and I was afraid that the building would be set afire, so I took it up with Mr. Murphy and showed him these things and that the foundation

was all gone, that the roof was leaking, and told him we have got to have those things fixed, and he went and looked it over and found that it had to have a new roof on it, so he asked me to get bids on it, which I did. . . . Mr. Murphy told me to go ahead and use my own judgment on these things, although I consulted him on everything that was done. Mr. Murphy was paying the cost of this work, and he went over to the Bank of California and made a deposit of some of his money in a checking account in my name, and I issued the checks."

. The witness stated that, when the question of heating the dance hall arose, he consulted the appellant about the installation of a veneer ceiling and was told to go ahead and put it in; that before this was done, however, he went to a dance hall where another type of decorative ceiling was in use instead of a veneer ceiling; that he explained the plan to appellant, and that, during the conference, the respondent entered and said he could install a cheesecloth or sheeting, which would help to keep the heat down.

"I told Mr. Murphy, 'Why not try it for a year and if it is not satisfactory we can put the ceiling in after that time.' Mr. Murphy okehed it before Mr. Smyser."

Werner further testified:

"On the eighth day of October, 1934, I signed a lease with Mr. Smyser for the decorations to be put in. This was signed after the conversation with Mr. Murphy, as Mr. Smyser did not have a contract with him at that time and Mr. Murphy said, 'All right, Werner, have him sign it,' so the contract was brought to me and I signed it."

As to the business relations between himself and appellant, Werner testified:

"I had no arrangements with Mr. Murphy relative to the operation of this dance hall after it was completed at all. The money that was deposited in the Bank of California was used for paying bills. When

there was more bills to be paid than there was money in the bank I would go to Mr. Murphy and he would give me a check to put in the bank to pay for it. . . . Q. Were you running it for yourself, or whom? A. I don't know who in hell I was running it for. Q. You don't? A. No, sir, just running it. . . . Well, the only interest I could see, I was to get an option of buying it.''

Respondent testified that, in the early part of October, 1934, he was informed that the dance hall was going to be redecorated, and he called on appellant in regard to it; that appellant told him Werner was the man to see; that, just as he was leaving, Werner came in, and they talked over the details of the decorating and the advantage of his plan of decoration over the veneer ceiling which they were considering; that it was afterwards decided his decorations would be installed as outlined,—both appellant and Werner agreeing. Pressed as to what appellant said about his doing the work, the respondent testified:

· ''He did not say—I don't know how you would put it but it was in the nature of a conversation between the three of us, and I can't say which one said what, but they agreed that that decoration would go in. . . . Both Mr. Murphy and Mr. Werner were talking. I did not depict which was which, but it was a general conversation. The cost was figured at $55 a month. . . . THE COURT: Either this man does not want to tell, or else he has not made up his mind to tell. . . . A. (interrupting) Your client told me to see J. J. Werner, and when Werner was there we transacted the business. He was right behind me and we went far enough in details so I reached in my pocket for a contract blank, and I did not have it with me. . . . I did not have Murphy sign the contract because he told me that J. J. Werner was the man to see.''

Appellant testified that he had known Werner for two or three years previous to the time of his acquisi-

tion of the dance hall property, and that, prior to July, 1934, he had had conversations with Werner concerning the purchase of the property. Werner had made repeated inquiries of him about it and seemed anxious to buy. He told Werner he wanted just what he had in the property, approximately twenty thousand dollars. Werner was attempting the sale of his own property for cash, which was to be turned over to appellant. Werner said the place would need fixing up, and offered to do it if the appellant would loan him the money. "I will go to work and take it off your hands and pay you just as soon as I sell my place." When Werner enumerated several items of repairs and improvements needed, appellant inquired of him how much money he thought it would take, to which Werner answered that it might run into three thousand dollars.

"I said, 'Well, I think we can make a deal on that.' . . . so we made a deal for him to pay me twenty thousand dollars and what he got for the selling of his store, and the balance of it was to be paid a thousand dollars a year for twenty years . . . at six per cent."

Appellant explained that the agreement was not reduced to writing because his attorney was then engaged in some special employment by the county.

After advancing several sums, aggregating $3,500, the appellant left for California and did not come back until March 3, 1935. The first time he saw respondent was in his office sometime in the middle of September, 1934, when respondent called to introduce himself and inquire about the dance hall. He told him he had sold it to Werner. Nothing else was said at the time, and he did not see respondent again until his return from California several months later and after the work was done. He denied that respondent and Werner were .

ever in his office together, or that he had had any conversation with them.

The court resolved the issue of fact raised by this conflicting evidence in favor of respondent. The language of the oral decision of the court implied the existence of a tentative agreement that appellant was to advance the funds to repair and refit the dance hall property with the view that, when it was in a condition suitable for the purpose for which it was intended, there was to be a contract, by the terms of which Werner was to pay the appellant his investment in the property, and that, in refitting the place, Werner was acting as the agent of the appellant. The court did not accept the view of appellant that the sums advanced from time to time by him were personal loans to Werner. Of course, if the money placed at the disposal of Werner for the other improvements was not a loan, but was intended for paying the cost of the work done on the building for the account of appellant, there is no reason for assuming that the improvements here involved were made on any different basis.

We are of the opinion that the record sustains the conclusions reached by the trial court, and that the judgment should be affirmed.

Steinert, C. J., Blake, Main, and Millard, JJ., concur.